Case 3:19-cv-00320   Document 87   Filed on 03/04/22 in TXSD   Page 1 of 17

United States District Court
Southern District of Texas
**ENTERED**
March 04, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| TERRY GENTRY, ET AL., § <br> § <br> Plaintiffs. § <br> § <br> VS. § <br> § <br> HAMILTON-RYKER IT § <br> SOLUTIONS, LLC, § <br> § <br> Defendant. § | CIVIL ACTION NO. 3:19-cv-00320 |

## MEMORANDUM AND RECOMMENDATION

Pending before me is Defendant Hamilton-Ryker Solutions, LLC's Motion for Summary Judgment (Dkt. 55) and Plaintiffs' Motion for Partial Summary Judgment and Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 60). Having reviewed the briefing, the record, and the applicable law, I recommend that both motions be **GRANTED in part and DENIED in part**. I explain my reasoning below.

## BACKGROUND

This is a suit to recover unpaid overtime wages pursuant to the Fair Labor Standards Act ("FLSA"). On September 25, 2019, Plaintiff Terry Gentry ("Gentry"), both individually and on behalf of all others similarly situated, sued Hamilton-Ryker Solutions, LLC ("HR-IT") alleging the company unlawfully paid him the same hourly rate for all hours worked, with no overtime premium for hours worked in excess of 40 hours in a workweek.[1] On April 20, 2020, the parties agreed to conditionally certify this matter as a collective action under 29 U.S.C. § 216(b).

---

[1] The underlying documents in this case are largely in the name of iSymphony, LLC, a wholly-owned subsidiary of HR-IT. For simplification purposes, I simply refer to HR-IT, as was done by the parties throughout their briefing.

Shortly thereafter, on May 28, 2020, Opt-In Plaintiff Marc Taylor ("Taylor") consented to join the lawsuit.

HR-IT is an industry-leading provider of professional staffing and recruiting services that facilitates workforce procurement and management processes for its clients, as well as provides compliance and payrolling services. In 2014, HR-IT contracted with Freeport LNG Expansion, L.P. ("Freeport") to provide certain staffing and placement services related to the construction and commissioning of Freeport's natural gas liquefaction and LNG loading facility on Quintana Island near Freeport, Texas (the "Freeport Project"). Gentry and Taylor ("Plaintiffs") were both hired to work on the Freeport Project.

**Gentry.** Gentry worked for HR-IT as a Senior Control Systems Engineer assigned to the Freeport Project from June 1, 2015, to March 13, 2019. The initial employment offer letter, dated April 29, 2015, described the following compensation parameters:

> Below is the information regarding compensation:
> - You will be paid $123.00 per hour straight time and overtime
> - No overtime will be worked without Supervisor/Manager's approval
> - Mileage reimbursement at 57.5 cents per mile for business miles driven in your personal vehicle
> - You will be eligible to participate in iSymphony's group health plan and after 90 days of employment you are eligible to participate in iSymphony's 401K plan.
> - Your assignment will be reviewed annually for extension through 2017
>
> As hourly contract personnel of iSymphony, you will only be paid for the hours you have worked. You are not eligible to receive any vacation or holiday pay unless you have worked on those days and it has been approved by the manager.

Dkt 55-6 at 2. This compensation structure prevailed until June 2017, when HR-IT issued an Orientation Guide describing a new compensation structure, which it now claims applies to Gentry. *See* Dkt. 55-4. In pertinent part, the Orientation Guide provides:

2

> **RATE OF PAY**
>
> Your rate of pay may vary with each assignment. You will always be informed of your pay rate before you start an assignment.
>
> Employees who are classified as highly compensated exempt employees pursuant to the FLSA will be compensated a Guaranteed Weekly Salary equal to 8 hours of pay. This Guaranteed Weekly Salary will be paid for every week that an employee performs *any* work. Highly compensated exempt employees will also be paid their additional hourly rate for all hours worked in excess of 8 hours in a work week, including those hours worked over 40 in a particular week.
>
> <u>Employees will not be paid the Guaranteed Weekly Salary for any particular work week in which he/she does not perform any work.</u>

*Id.* at 10. According to HR-IT's new compensation structure, Gentry was entitled to a guaranteed weekly salary (for eight hours) of $984 and would be paid hourly for any work beyond eight hours.

**Taylor.** Taylor currently works for HR-IT as the Lead Electrical Engineer assigned to the Freeport Project. He began his employment with HR-IT on August 28, 2017, after the compensation structure described in the Orientation Guide was purportedly in place. *See* Dkt. 55-21 at 2. Consequently, his initial employment offer letter, dated August 21, 2017, described his compensation parameters as follows:

> Below is the information regarding compensation:
> - For any week in which you perform any work, you will be entitled to a guaranteed weekly salary of $1200.00 You will also be paid an additional hourly rate of $150.00 for all hours worked in excess of 8 hours in a workweek, including those hours worked over 40 in a particular week. *You will not be paid the guaranteed weekly salary for any particular work week in which you do not perform any work.*
> - Your supervisor/manager's prior approval for hours worked over 40 hours a week is preferred.
> - Per Diem - $129.00 per day while living and working near site; $100.00 per day while traveling for business, on vacation, or at permanent residence.
> - Your assignment will be reviewed annually for extension at the client's approval.
>
> You will be considered an exempt employee in accordance with the Fair Labor Standards Act. You are not eligible to receive any vacation or holiday pay unless you have worked on those days and have prior approval from the manager.

*Id.*

It is undisputed that Plaintiffs almost always worked more than 40 hours each workweek. Neither party contests that, absent the application of an exemption of some sort, HR-IT has violated the FLSA. Thus, the new compensation structure is the primary point of contention between the parties in

their respective motions for summary judgment. HR-IT claims that under the new compensation structure, Plaintiffs are both "exempt from the FLSA's overtime provisions pursuant to the highly compensated employee and/or learned professional exemptions." Dkt. 55 at 9. HR-IT also disputes whether Plaintiffs are entitled to liquidated damages or "can establish that HR-IT willfully violated the FLSA in order to invoke the statute's three-year statute of limitations." *Id.* Plaintiffs both argue that no exemptions apply, they are entitled to liquidated damages, and the three-year statute of limitations is applicable. I address each issue in turn.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to find in favor of the nonmovant. *See Rodriguez v. Webb Hosp. Corp.*, 234 F. Supp. 3d 834, 837 (S.D. Tex. 2017).

To survive summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

## ANALYSIS

### A. THE FLSA, ITS EXEMPTIONS, AND THE SALARY BASIS TEST

The FLSA establishes a standard 40-hour workweek by requiring employers to pay "time and a half" for any additional time worked beyond the standard workweek. *See* 29 U.S.C. § 207(a).

Congress has authorized the Secretary of Labor ("Secretary") to promulgate regulations exempting "bona fide executive, administrative, [and] professional" employees from overtime. 29 U.S.C. § 213(a)(1). Under that authority, the Secretary has exempted highly compensated, as well as more modestly paid executive, administrative, and professional employees. *See* 29 C.F.R. §§ 541.100, 541.200, 541.300, 541.601. In this case, HR-IT claims that Plaintiffs are both exempted as highly compensated (§ 541.601) and learned professionals (§ 541.300).

As recently explained by the *en banc* Fifth Circuit, to fall within either exemption three conditions must be met:

> First, the employee must meet certain criteria concerning the performance of executive, administrative, and professional duties. Second, the employee must meet certain minimum income thresholds. Finally, the employee must be paid on a "salary basis." And although the duties criteria and income thresholds vary from exemption to exemption, the regulations apply the same salary-basis requirement to all four exemptions.

*Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 290–91 (5th Cir. 2021). Here, the parties do not dispute that Plaintiffs meet the income threshold and duties requirements of both exemptions. However, the parties hotly dispute the application of the salary-basis test.

The confusion surrounding the salary-basis test is understandable. The regulations are somewhat confusing, as are many of the cases interpreting the regulations. Thus, rather than address the parties' respective arguments concerning their interpretation of the regulations, I will first directly explain my understanding of the salary-basis test. Then, I will apply the facts of this case.

**The Salary-Basis Test**. Under the highly compensated and learned professional exemptions, a prospective exempt employee must be paid on a salary basis as defined by 29 C.F.R. § 541.602. *See* 29 C.F.R. § 541.300(b) (learned professional exemption), § 541.601(b)(1) (highly compensated employee exemption). In *Hewitt*, the Fifth Circuit explained that FLSA regulations generally define "salary as compensation paid 'on a weekly, or less frequent basis,' 'without regard to the number of days or hours worked.'" 15 F.4th at 291 (quoting 29 C.F.R. § 541.602(a)(1)). But this general understanding of salary is modified by 29 C.F.R. § 541.604 when an employee's compensation is composed of a salary plus additional compensation, as is the case here.[2] *See* § 541.601(b)(1) (recognizing that an employee's "total annual compensation" may include a salary and "commissions, nondiscretionary bonuses and other nondiscretionary compensation" earned during the year), § 541.604 (describing how an employee can lose an exemption when an employer provides a minimum guaranteed salary plus additional compensation).[3] *See also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2018-25, 2018 WL 5925115 (Nov. 8, 2018) (applying § 541.604 where employee was paid a guaranteed weekly salary, plus an hourly rate for hours worked beyond the salaried hours used to calculate the employee's guaranteed weekly salary).

---

[2] HR-IT takes the position that § 541.604 has no bearing on the highly compensated and learned professional exemptions because the text of each exemption does not cite that regulation. HR-IT points to a pair of cases from outside this circuit supporting this proposition. *See Litz v. Saint Consulting Grp., Inc.*, 772 F.3d 1 (1st Cir. 2014); *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146 (2nd Cir. 2013). Because *Hewitt* rejected the notion that § 541.604 was inapplicable to the highly compensated employee exemption, I must reject HR-IT's argument. *See* 15 F.4th at 296–97. However, I note that the *Hewitt* dissenters raised nearly the same argument advanced by HR-IT.

[3] I do not see a conflict between § 541.601(b)(1) and § 541.604. In my view, § 541.601(b)(1) merely makes clear that "total annual compensation," as used in subsection (a)(1), includes all pay; while § 541.604 specifically addresses how certain types of compensation, when included with a guaranteed weekly salary, affect the salary-basis test under § 541.602.

**29 C.F.R. § 541.604(a)**. Under 29 C.F.R. § 541.604(a), "[a]n employer may provide an exempt employee with additional compensation without losing [an] exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis." 29 C.F.R. § 541.604(a). The regulation provides two examples of the additional compensation it had in mind: a "percent[age] commission on sales" and "a percentage of the sales or profits of the employer." *Id*. Neither of these examples is at issue in this case. However, § 541.604(a) goes on to state:

> Similarly, the exemption is not lost if an exempt employee who is guaranteed at least $684 each week paid on a salary basis also receives additional compensation based on hours worked for work beyond the normal workweek. Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.

*Id*. Arguably, this portion of § 541.604(a), which only requires a minimum weekly guarantee, could apply to this case. I now turn to § 541.604(b).

**29 C.F.R. § 541.604(b)**. Under § 541.604(b),

> An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.

Thus, under § 541.604(b), an employee "can be exempt from overtime—but only 'if' two conditions are met: the minimum weekly guarantee condition and the reasonable relationship condition." *Hewitt*, 15 F.4th at 291. Subsection (b)'s inclusion of the reasonable-relationship test is a marked difference between it and subsection (a). Indeed, failure to satisfy the reasonable-relationship test will render non-exempt an otherwise exempt employee. Plaintiffs' claim § 541.604(b) applies in this case, and HR-IT cannot satisfy the reasonable-relationship test.

7

**Distinguishing Between 29 C.F.R. § 541.604(a) and (b)**. I have dedicated a considerable amount of time to understanding the distinction between the latter part of § 541.604(a) and § 541.604(b). Based on my reading, the distinction is subtle.

By its plain terms, § 541.604(a) contemplates a situation where an employee receives a guaranteed minimum weekly salary for work completed during the normal workweek but "also receives additional compensation **based on hours worked for work beyond the normal workweek**." § 541.604(a) (emphasis added). This emphasized language is proscriptive. Although § 541.604(a) goes on to explain that additional compensation "may be paid on any basis," including hourly, the proscriptive language makes plain that the employer may only do so for hours worked beyond the normal workweek. *See, e.g.*, U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2020-2, 2020 WL 122924 at *3–4 (Jan. 7, 2020) (explaining that § 541.604(a) applied when an employee was "already paid on a bona fide salary basis" and his "additional compensation. . . [was] paid **for additional work beyond the normal workweek**" (emphasis added)). As explained by one court, "'beyond the normal workweek' signifies hours worked in excess of forty." *Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310, 1321 (N.D. Ga. 2013).

Section 541.604(b) is slightly different, it requires that the "**employee's earnings** . . . be computed on an hourly, a daily or a shift basis." 29 C.F.R. § 541.604(b) (emphasis added). Indeed, § 541.604(b) expressly states: "The reasonable relationship requirement applies **only if** the **employee's pay is computed** on an hourly, daily or shift basis." *Id.* (emphasis added). This bolded text plainly contemplates a holistic view of an employee's pay, meaning an employee receiving a guaranteed minimum weekly salary plus an hourly wage could fall under § 541.604(b) because, in part, "the employee's pay is computed on an hourly . . . basis." *Id.* In other words, I take the emphasized text to mean that if an employee's additional compensation is computed on an hourly basis, and it is

8

not for additional "work beyond the normal workweek" (as allowed under § 541.604(a)), then the requirements of § 541.604(b) apply. Said another way, if "the guaranteed salary amount was for a normal workweek (i.e., 40 hours)," § 541.604(a) applies, but if "the guaranteed amount was in fact for fewer hours than a normal workweek of forty (40) hours," § 541.604(b) applies. *Holladay v. Burch, Oxner, Seale Co., CPA's, PA*, No. CIV.A.407-CV-03804RB, 2009 WL 614783, at *7 (D.S.C. Mar. 6, 2009).

My understanding is bolstered by the Opinion Letter FLSA2018-25. The Wage and Hour Division considered the following scenario:

> You state that your client, an engineering firm, classifies its engineers and senior designers as exempt professionals under the Fair Labor Standards Act (FLSA). You ask WHD to assume that their job duties meet the requirements of the professional exemption. Your client pays these employees a guaranteed weekly salary of $2,100. Your client derives this amount by multiplying $70 by 30 hours (the minimum hours the employees typically work per workweek). Your client pays this guaranteed weekly salary even if an employee works fewer than 30 hours. If an employee works more than 30 hours, however, your client pays $70 for each additional hour. For example, if an engineer works 45 hours in a workweek, he or she will receive $3,150 (the $2,100 weekly guarantee plus $1,050 for the extra hours worked ($70 x 15 hours)). You state that the employees' work hours are virtually impossible to predict from workweek to workweek due to the varying requirements of clients' projects. Although actual weekly earnings vary, you informed WHD staff that the employees earned an average of $2,721 per week in 2017, with average weekly compensation ranging from $1,793 to $3,761.

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA2018-25, 2018 WL 5925115 (Nov. 8, 2018). This proffered scenario is substantially similar to the facts in this case. The hypothetical employee is an engineer; he makes around $140,000 a year (calculated using average weekly pay); his pay structure includes a guaranteed weekly salary (calculated by multiplying 30 hours—which is less than 40 hours); and when he works more hours than contemplated by the guaranteed weekly salary (30 hours), he is paid a straight hourly rate for each hour worked. All

of this is present in this case. The biggest difference is that the hypothetical employee received a guaranteed weekly salary based on 30 hours of work and, here, the guarantee corresponds to only eight hours of work. But in both cases, the weekly guarantee was calculated based on less than a normal workweek, i.e., 40 hours. Notwithstanding this slight factual difference, consistent with my understanding of § 541.604 as described above, the Opinion Letter concluded that § 541.604(b) applied. *See id.*

For all these reasons, I find that § 541.604(b) applies, and HR-IT must satisfy the reasonable-relationship test.

**The Reasonable-Relationship Test**. Under § 541.604(b), a reasonable relationship must exist between the guaranteed weekly salary and an employee's actual earned pay. Indeed, the regulation states that "[t]he reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings . . . for the employee's normal scheduled workweek." 29 C.F.R. § 541.604(b). In applying this test, the Department of Labor "compares the exempt employee's actual earnings to his/her guaranteed weekly salary." *Sonnier v. Recon Mgmt. Servs. Inc.*, No. 2:20-CV-00002, 2022 WL 141779, at *6 (W.D. La. Jan. 14, 2022). A ratio at or near 1.5-to-1 of actual earnings to guaranteed weekly salary is generally required to satisfy the reasonable-relationship test. *See id.* (collecting authorities).

Here, HR-IT does not even attempt to satisfy the reasonable-relationship test, which alone is fatal to its claimed exemptions. *See Tyler v. Union Oil Co. of California*, 304 F.3d 379, 402 (5th Cir. 2002) (FLSA "exemptions are construed narrowly against the employer and the employer has the burden of proving that an employee is exempt"). But even if HR-IT attempted to satisfy the test, it could not do so because HR-IT pays Plaintiffs "orders of magnitude greater than the minimum weekly guaranteed amount." *Hewitt*, 15 F.4th at 294. Specifically, as Plaintiffs succinctly detail:

> [O]n average, Plaintiff Terry Gentry worked 43.48 hours per week. The ratio between Plaintiff Terry Gentry's average gross hourly earnings ($5,347.66) and the amount HRI purported to designate as "Guaranteed Weekly Salary" ($984.00) is 5.42-to-1. On average, Opt-in Plaintiff Marc Taylor worked 41.52 hours per week. The ratio between Opt-in Plaintiff Marc Taylor's average gross hourly earnings ($6,228.57) and the amount HRI purported to designate as "Guaranteed Weekly Salary" ($1,200.00) is 5.19-to-1.

Dkt. 61 at 24 (emphasis and citations omitted). These numbers are far beyond what is considered reasonable.

\*\*\*

In sum, I find that given the facts involved in this case, § 541.604(b) applies, and HR-IT has failed to carry its burden of demonstrating that the highly compensated and learned professional exemptions are applicable to Plaintiffs. Consequently, because it is undisputed that HR-IT did not pay Plaintiffs time and a half for hours worked beyond 40 hours, Plaintiffs are entitled to damages.

I now turn to the issue of liquidated damages.

## B. LIQUIDATED DAMAGES

A court must award a prevailing FLSA plaintiff liquidated damages in an amount equal to actual damages unless the employer is able to demonstrate a good-faith basis for believing its wage practices and employee classifications comply with the FLSA. *See* 29 U.S.C. § 216(b). "A district court may, 'in its sound discretion,' refuse to award liquidated damages if the employer demonstrates good faith and reasonable grounds for believing it was not in violation." *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 931 (5th Cir. 2018) (citing 29 U.S.C. § 260). HR-IT maintains that it considered Plaintiffs exempt under the highly compensated and learned professional exemptions and paid them a guaranteed weekly salary with additional compensation in good faith. It therefore contends Plaintiffs are not entitled to liquidated damages.

HR-IT's burden to prove the reasonableness of its conduct is "substantial." *Id.* "The burden is a difficult one to meet; double damages are the norm, single

damages the exception." *Dalheim v. KDFW-TV*, 712 F. Supp. 533, 536 (N.D. Tex. 1989) (quotation omitted). "To prove good faith, an employer must show it had an honest intention to ascertain what the FLSA requires and to act in accordance with it." *Ellis v. Viking Enters., Inc.*, No. SA-18-CV-00772-ESC, 2019 WL 6271784, at *4 (W.D. Tex. Nov. 22, 2019) (cleaned up). "[G]ood faith requires some duty to investigate potential liability under the FLSA." *Barcellona v. Tiffany Eng. Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979). The reasonableness of HR-IT's conduct also has an objective component because an employer may not rely on ignorance alone as reasonable grounds for believing it did not violate the FLSA. *See id.* at 468.

The most common way of proving good faith is when an employer proves reliance on the advice of the Department of Labor ("DOL") or the advice of counsel on its classification and wage practices. *See, e.g.*, *Lee v. Coahoma Cty.*, 937 F.2d 220, 227 (5th Cir. 1991) (holding district court did not abuse its discretion in refusing to award liquidated damages where defendant had sought advice of counsel, who attended a seminar on the FLSA and consulted with DOL in structuring compensation plan that complied with the Act, but later implemented the compensation plan incorrectly).

Here, HR-IT attempts to demonstrate that it acted in good faith by pointing to the declaration of HR-IT's President Keith Patel ("Patel"). *See* Dkt. 55-1. Patel testified that because Plaintiffs were high-level engineers with high rates of pay, they were classified as exempt. *See id.* at 4. He also stated that "HR-IT makes every effort to ensure its exempt employees are properly paid their full guaranteed salary (as well as all additional compensation earned) for every workweek that the employee performs any work." *Id.* HR-IT also points to a sentence in its Orientation Guide: "Employees who are classified as highly compensated exempt employees pursuant to the FLSA will be compensated a Guaranteed Weekly Salary equal to 8 hours of pay." Dkt. 55-4 at 10. Lastly, HR-IT claims that its actions were objectively reasonable because *Litz* and *Anani* were both "issued before Gentry and Taylor began working for HR-IT." Dkt. 63 at 24. *See* note 2, *supra*.

I am not convinced that HR-IT has carried its burden. As argued by Plaintiffs, Patel's "declaration does not establish that [HR-IT] consulted with any attorneys, made any investigation, [or] did any research to determine its potential liability under the FLSA." Dkt. 64 at 14. Equally troubling is HR-IT's reference to the First and Second Circuits' *Litz* and *Anani* decisions. Although the decisions predate Plaintiffs' employment, I do not see any summary judgment evidence demonstrating that HR-IT actually consulted or relied upon them in any way. *See McWright v. Greenville Pub. Sch. Dist.*, No. 415CV00106DMBJMV, 2016 WL 7471318, at *3 (N.D. Miss. Dec. 28, 2016) (finding employer did not carry its good-faith burden where it claimed to rely on a DOL opinion letter but "offer[ed] no evidence . . . that it actually relied upon the letter in formulating [the employee's] compensation"). Considering the entire record, HR-IT has not demonstrated that it had an honest intention to ascertain what the FLSA requires and to act in accordance with it. *See Ellis*, 2019 WL 6271784, at *4.

Consequently, I find that Plaintiffs are entitled to liquidated damages.

## C. WILLFULNESS

FLSA claims are generally subject to a two-year limitations period, but if the violation is "willful," a three-year limitations period applies. *See* 29 U.S.C. § 255(a). "In that regard, although the employer has the burden of demonstrating good faith and reasonableness to avoid assessment of liquidated damages, the employee has the burden of demonstrating willfulness for the three-year limitations period to apply." *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015) (citation omitted).

"The standard for determining willfulness is whether the employer either knew or showed reckless disregard for whether his conduct violated the FLSA." *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1036 (5th Cir. 1993). "Neither the failure to seek legal advice nor negligent or unreasonable conduct suffices to demonstrate a willful violation." *Remond v. Nabors Corp. Servs. Inc.*, No. CV H-18-460, 2018 WL 5311752, at *5 (S.D. Tex. Oct. 26, 2018). "Mere knowledge of the

FLSA and its potential applicability does not suffice, nor does conduct that is merely negligent or unreasonable." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015). "Because willfulness is a question of fact, summary judgment in favor of the employer is inappropriate if the plaintiff has introduced evidence sufficient to support a finding of willfulness." *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009) (footnote omitted).

In their motion, Plaintiffs offer the following "evidence" to meet their willfulness burden: HR-IT "moved away from a pure hourly pay structure to an hourly pay structure with an obviously low purported 'minimum weekly guarantee'" and "[t]here was no reason for Defendant to alter its pay structure unless it learned of the FLSA's requirements, and no reason to impose such a facially low 'guarantee' absent its intent to defy the FLSA or its reckless disregard for the FLSA." Dkt. 61 at 32. Later, in their reply brief, Plaintiffs add that "[i]t is reasonable to infer that Defendant intentionally changed its pay practice to skirt the FLSA's requirements by clouding the nature of Plaintiffs' pay while still functionally paying them on an hourly basis." Dkt. 64 at 16.

Plaintiffs have not offered facts demonstrating that HR-IT knew that its pay policy violated the FLSA, nor have they offered evidence that HR-IT had some reason to know that its conduct violated the FLSA. Instead, Plaintiffs have offered nothing more than unsubstantiated assertions of fact, coupled with a request that I infer willfulness. "It is well-settled that unsubstantiated assertions are insufficient summary judgment evidence." *Gilchrist v. Schlumberger Tech. Corp.*, No. 1:16-CV-008-LY, 2018 WL 4169313, at *8 (W.D. Tex. June 4, 2018). Moreover, Plaintiffs have not offered adequate evidence to support an inference of willfulness. *See Pye v. Oil States Energy Servs., LLC*, 233 F. Supp. 3d 541, 564 n.167 (W.D. Tex. 2017) (identifying five types of evidence courts have found sufficient to support an inference of willfulness).

Accordingly, because Plaintiffs have failed to carry their burden, HR-IT is entitled to summary judgment on the issue of willfulness. The ordinary two-year limitations period applies in this case.

### D. DAMAGES CALCULATION

Plaintiffs have submitted a spreadsheet tabulating the data from their respective paystubs and calculating the amount of overtime they worked for each week while employed at HR-IT. *See* 62-7. The spreadsheet also uses those inputs to calculate the respective damages, assuming both a two-year and three-year limitations period applies. At oral argument, HR-IT stated on the record that it does not dispute the accuracy of Plaintiffs' calculations.

"In a FLSA collective action, the statute of limitations for a named plaintiff . . . runs from the date that the plaintiff files the complaint, while the limitations period for an opt-in plaintiff runs from the date the written opt-in consent is filed in court." *Tarango v. Chemix Energy Servs., LLC*, No. SA-18-CV-00370-XR, 2021 WL 1269905, at *2 (W.D. Tex. Apr. 6, 2021). Gentry filed the complaint and his consent on September 25, 2019. *See* Dkt. 1. Taylor filed his consent on May 28, 2020. *See* Dkt. 38. Applying a two-year limitations period, Gentry has a right to damages for any cause of action that accrued on or after September 25, 2017, and Taylor has a right to damages for any cause of action that accrued on or after May 28, 2018. "A cause of action under the FLSA accrues at each regular payday immediately following the work period during which the services were rendered for which the overtime compensation is claimed." *Mata v. Caring For You Home Health, Inc.*, 94 F. Supp. 3d 867, 878 (S.D. Tex. 2015).

Plaintiffs tabulated their damages using the traditional method of calculations, which is applicable in this case. I adopt those uncontested calculations. Based on those calculations, Gentry is entitled to $14,329.50 in unpaid overtime wages for the two years prior to the filing of his consent, and Taylor is entitled to $33,450.00 in unpaid overtime wages for the two years prior to the filing of his consent. *See* Dkt. 62-7 at 4, 8.

Because I have found that Plaintiffs are entitled to liquidated damages, Gentry is also entitled to $14,329.50 in liquidated damages, and Taylor is also entitled to $33,450.00 in liquidated damages.

\*\*\*

In sum, Gentry should be awarded $28,659 in compensatory and liquidated damages, and Taylor should be awarded $66,900 in compensatory and liquidated damages.

## CONCLUSION

For the reasons explained above, I recommend that Defendant Hamilton-Ryker Solutions, LLC's Motion for Summary Judgment (Dkt. 55) be **GRANTED in part and DENIED in part** and Plaintiffs' Motion for Partial Summary Judgment and Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 60) be **GRANTED in part and DENIED in part**.

Specifically, I find that: (1) HR-IT is liable for Plaintiffs' unpaid overtime wages; (2) no exemption excuses HR-IT's failure to pay Plaintiffs overtime; (3) Plaintiffs are entitled to liquidated damages; (4) HR-IT did not willfully violate the FLSA, so the two year limitations period applies in this case; (5) Gentry should be awarded $28,659 (consisting of unpaid overtime wages of $14,329.50 and liquidated damages of $14,329.50); and (6) Taylor should be awarded $66,900 (consisting of unpaid overtime wages of $33,450.00 and liquidated damages of $33,450.00). If this Memorandum and Recommendation is adopted, Plaintiffs should be ordered to move for attorney's fees within 14 days of entry of the adoption order.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.


SIGNED this 4th day of March 2022.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE