UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| THE ESTATE OF TERRY GENTRY, on behalf of himself and all others similarly situated,<br><br>v.<br><br>HAMILTON-RYKER IT SOLUTIONS, LLC | **C. A. NO. 3:19-cv-00320** |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

**1.  INTRODUCTION**

Plaintiff won his case on and is a prevailing plaintiff entitled to *mandatory* attorney's fees under the FLSA. *See Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016) ("Although the district court has discretion to determine what is reasonable, the court does not have discretion to decline to award attorney's fees to a prevailing party without making such a determination."). However, Defendant presents an unusual and unsupported number of objections to Plaintiff's counsel's billing records, and inappropriately suggests three experienced FLSA practitioners should bill at paralegal rates. The Court should reject Defendant's request to slash Plaintiff's counsel's fees.

**2.  ARGUMENT AND AUTHORITY**

**A.      Adjustments to Lodestar for Billing Judgment**

Defendant objections to nearly all of Plaintiff's counsel's billing entries for one reason or another. With respect to Ms. Arbuckle, who was the primary litigator in the case from its inception over the course of nearly three years, and who will remain with the case through appeal, Defendant objects to 304 of her 459 billing entries. Indeed, Defendant only agrees with $20,920 of Ms. Arbuckle's lodestar of $20,920. Defendant agrees with *none* of Mr. Prieto's billing. And Defendant disputes 21 of

Mr. Burch's 36 total billing entries. This fractious approach to disputing Plaintiff's lodestar serves more to establish Defendant's unreasonableness than Plaintiff's lack of billing judgment.

Courts recognize the presumption that the lodestar under a fee-shifting statute is reasonable and are cautioned not to allow the determination of fees to "result in a second major litigation." *See Shelton v. Louisiana State*, 919 F.3d 325, 331 (5th Cir. 2019) (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1933)).) Defendant's scattershot attack on Plaintiff's counsel's lodestar threatens to create such a major litigation. The Court should decline Defendant's invitation.

1.  **Melinda Arbuckle and Rex Burch**

   *a.  Vagueness*

With respect to Defendant's allegations that Plaintiff's counsel's billing records are impermissibly vague, the Fifth Circuit has recognized that:

> [W]e are mindful that practical considerations of the daily practice of law in this day and age preclude "writing a book" to describe in excruciating detail the professional services rendered for each hour or fraction of an hour. We also recognize that, in this era of computerized timekeeping, many data processing programs limit the amount of input for any given hourly or daily entry.

*League of United Latin American Citizens No. 4552 (LULAC) v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997) (quoting *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995). Rather, courts may examine the reasonableness of billing entries based on "the number of hours spent on such tasks, the more detailed entries surrounding them, and their dates of entry, which indicates the point in the proceedings in which the particular services were rendered." *Olibas v. Native Oilfield Servs., LLC*, 104 F. Supp. 3d 791, 811-12 (N.D. Tex. 2015).

In its briefing, and in characteristically overblown fashion, Defendant claims there are a "plethora" of time entries that state "review various emails or "status update" without any indication of the subject matter. Defendant does not cite any specific examples in its brief, because generally

speaking such billing records are accompanied by relevant details either in the billing records themselves or in nearby billing entries. For instance, there are only three entries regarding a status update:

| Arbuckle | 5/11/2020 | 0.8 | $400 | $320 | Case status update to client Terry Gentry |
|---|---|---|---|---|---|
| Arbuckle | 12/4/2020 | 0.4 | $400 | $160 | Brief call with ref counsel re status update |
| Arbuckle | 1/15/2021 | 0.9 | $400 | $360 | Status update with Terry Gentry |

- Two status calls with a lead plaintiff seeking case updates, and one with a referring attorney are hardly an issue in a case pending for nearly three years. Indeed, counsel owes a duty to communicate with the client regarding what is happening in that client's case. Moreover, these entries are not impermissibly vague as they list who the call is between, Mr. Gentry and Ms. Arbuckle or Ms. Arbuckle and the referring attorney who also shares a duty of representation of the client. Furthermore, providing considerably more information regarding the substance of the calls could well violate the attorney-client privilege, which would be a serious breach.

    b. *Block Billing*

Block billing is the practice of lumping many disparate billing entries into a single entry which precludes the Court from analyzing the reasonableness of the time spent on the various tasks. *See, e.g.*, *Dobson v. Timeless Rests., Inc.*, No. 3:09-CV-2481-L, 2017 WL 1330164, at *6 (N.D. Tex. Apr. 11, 2017). Plaintiff's counsel have endeavored to refrain from block billing. Indeed, of the 44 examples of block billing cited by Defendant, many are not actual examples of block billing. For instance, Defendant claims the following entries as examples of block billing:

| Arbuckle | 1/27/2020 | 5.4 | $400 | $2,160 | Work on discovery responses and declaration with Terry Gentry |
|---|---|---|---|---|---|

- This is one telephone call with the Client during which counsel discussed critical facts regarding Mr. Gentry's employment with the company, and generated discovery responses and a declaration which was Mr. Gentry's sworn testimony. As this was one phone call where facts which were applicable to discovery responses and a declaration were discussed, this is not an example of block billing.

| Arbuckle | 1/31/2020 | 4.1 | $400 | $1,640 | Work on drafting discovery requests |
|---|---|---|---|---|---|

- Again, this is not an example of block billing. Does Defendant really need Plaintiff's counsel to specify how much time was spent drafting interrogatories versus requests for production? To what end? Did Defendant not have to respond to both types of written discovery?

3

| Arbuckle | 1/14/2021 | 2.4 | $400 | $960 | Review email re window of correction, research |
|---|---|---|---|---|---|

- Sometimes, rather than enter a separate line item for a .1 entry related to a particular issue, Ms. Arbuckle will group the two items together. Here, reviewing an email from opposing counsel regarding the window of correction took .1 of an hour, and researching the issue took 2.3 hours. This shorthand appears throughout Ms. Arbuckle's billing and serves to give context to her billing entries while requiring fewer entries overall. Defendant appears to be equally aggrieved when such entries are broken out. For instance, Defendant finds the following to be impermissibly vague:

| Arbuckle | 12/16/2019 | 0.3 | $400 | $120 | Various additional emails re rescheduling [26(f) conference] |
|---|---|---|---|---|---|
| Arbuckle | 12/16/2019 | 0.1 | $400 | $40 | Instructions to staff |

| Burch | 4/8/2022 | 2.5 | $650 | $1,625 | Work on declaration and related documents for fee petition (2.5) |
|---|---|---|---|---|---|

- This billing entry by Mr. Burch is similarly not block-billed. There is no requirement that Mr. Burch should have to break out time spent on his declaration and time spent on exhibits to his declaration. They are all part of the same transaction.

However, to the extent that counsel *has* engaged in block billing, courts do not always find block billing to be an adequate justification for reducing claimed lodestar. *See, e.g.*, *In re Anloc, LLC*, No. 12-31267, 2021 WL 5441076, at * (S.D. Tex. Bankr. Nov. 18, 2021) (noting that a reduction for block billing is not automatic, rather the relevant consideration is whether the evidence is adequate to enable the court to evaluate the reasonableness of the hours expended.) In each instance cited by Defendant with respect to block billing, the entries are adequate to assess the necessity of the billing entry and the reasonableness of the time spent on the task. There is no basis for a reduction of Plaintiff's counsel's lodestar based on block billing.

### c.   Case Strategy Conferences

Defendant also finds fault with Plaintiff's counsel's case strategy discussions. However, the cases cited by Defendant pertain to *intra*office communications. (ECF No. 104, p. 20, Br. p. 14.) Defendant forgets that this case required significant coordination of effort of several law firms

determining what discovery to engage in and when, what motions were appropriate, and discussion informing the other when one firm had discussions with opposing counsel. Furthermore, despite Defendant's contention, Plaintiff's counsel believes Ms. Arbuckle only billed for approximately 13.2 hours of case strategy conferences during the nearly three years this case has pended, which is not unreasonable. Plaintiff's counsel's billing judgment is particularly evident given the other timekeepers in the case wrote off the majority of those case strategy conferences. The level of communication between counsel was appropriate given the needs of the case and the attorneys involved. Further, to the extent Defendant contests these entries as "vague," that is necessarily so to avoid revealing privileged attorney work product.

### d.  *Excessive/Duplicative Billing*

Defendant maintains that the majority of Plaintiff's counsel's billing is excessive or duplicative, which cannot possibly be true. It takes time to litigate a case successfully, and counsel appropriately staffed one lead on the case, who received as needed assistance from two other partner level attorneys. The billing records are clear that there are not three lawyers perpetually billing on top of each other for doing the same work. Indeed, over 75% of the fees requested were generated by one lawyer, Ms. Arbuckle. This was not an overstaffed case, rather there were no associate-level attorneys available to work on this case. Furthermore, the intricate legal issues at play required experienced FLSA counsel.

Plaintiff will respond in particular to two of Defendant's objections: (1) that Plaintiff's counsel should have their hours docked because they efficiently referenced prior filings from their other cases and (2) that Plaintiff's counsel should have their hours docked because both Mr. Burch and Ms. Arbuckle appeared at hearings.

First, the fact that Plaintiff's counsel consulted filings from other cases tends to indicate that they *saved* time rather than generating everything from scratch. This practice should be encouraged. However, that does not mean that Plaintiff's counsel spent no time working on complaints, pretrial

filings, and the like for which they referenced prior filings. The hard part of being a lawyer is not generating templates or formatting documents, but making sure that claims are adequately pleaded, that all necessary documents are included in exhibit lists, that all appropriate questions are added to a proposed voir dire questionnaire and doing legal research to ensure that older filings are still applicable. Rather, Plaintiff's counsel saved some considerable time based on their prior experience. (*Compare* Arbuckle billing records regarding pretrial filings *with Olibas v. Native Oilfield Services, LLC*, 104 F. Supp. 3d 791, 812 (N.D. Tex. May 8, 2015) (approving thirty-seven hours spent working on pretrial disclosures alone)).

Second, it is perfectly reasonable that both Mr. Burch and Ms. Arbuckle attended hearings in this case. Both attorneys addressed the Court at such hearings, which is more than can be said of Defense counsel. Defendant forgets that it also brought two lawyers to hearings, but only one of its attorneys addressed the Court. None of Defendant's objections on these issues merits a reduction in Plaintiff's counsel's lodestar.

> ### e. Travel

At page 17 of its Response, Defendant requests that Plaintiff reduce the hours billed for Ms. Arbuckle's travel time to the initial status conference because Mr. Prieto, a local lawyer, also attended the initial status conference. Plaintiff agrees to the proposed reduction. Mr. Prieto attended the initial status conference because Ms. Arbuckle experienced travel delays *en route* to Galveston and was concerned with being late. Mr. Prieto was not intended to attend the initial status conference. Plaintiff agrees to reduce the total hours billed by Ms. Arbuckle by 6.2 hours.

> ### f. Clerical Work

In the interest of billing judgment, Ms. Arbuckle will reduce her requested lodestar by 3.7 hours to exclude time spent reviewing notices of electronic filing generated by Plaintiff. Although it is

important to confirm that documents are filed correctly, Plaintiff's counsel agree that in the exercise of billing judgment, a slight reduction is appropriate.

In sum, in the interest of billing judgment, Ms. Arbuckle agrees to reduce her requested fees by $3,960.00.

### 2.   Ricardo Prieto

Defendant claims that Mr. Prieto's extremely reasonable 22 hours of work in this case were "entire duplicative" of Ms. Arbuckle's hours. (ECF No. 104, p. 22, Br. p. 16) However, Mr. Prieto generated the lawsuit and needed to remain apprised of activity in the case because he was designated as Attorney-in-Charge under the local rules of this jurisdiction,[1] and so was ultimately responsible for the activity of Ms. Arbuckle. Furthermore, it is entirely appropriate for multiple attorneys to attend mediation in a high-stakes case, and so there is no cause for the total reduction that Defendant requests.

### 3.   "Unsuccessful" Motions and Claims

Defendant claims that Plaintiff's counsel should not be permitted to bill for time spent opposing its motion to stay and completing pretrial filings. However, Defendant mistakes the procedural history of the case.

Defendant's motion for stay was not "successful," and Plaintiff's opposition was not "unsuccessful." Rather, Defendant requested a stay pending the *en banc* opinion in *Hewitt v. Helix*. The Court took the matter under advisement and did not rule on Defendant's requested stay prior to a ruling in *Hewitt*, which mooted Defendant's motion. (*See* Minute Entry of July 13, 2021.) Furthermore, pursuant to the relevant scheduling order, Plaintiff's counsel began work on pretrial filings prior to Defense counsel conferring with respect to its proposed stay. (*Compare* Arbuckle Billing Records, beginning pretrial preparation on May 21, 2021 *with* ECF No. 67, certificate of conference on July 7,

---

[1]   *See* Local Rule 11.

2021.) Defense counsel cannot say that such work was unnecessary or unreasonable simply because it (much later) proposed a stay which was not in Plaintiff's best interest. Defense counsel's attempt to "Monday morning quarterback" Plaintiff's counsel's legitimate strategy decisions and proper representation of Plaintiff is not availing.

Further, Defendant claims that Plaintiff's counsel's time should be reduced for pursuing a claim that Defendant's conduct was willful, which the Court ultimately did not adjudge. While Defendant cites to *Gurule* for this proposition, it misses Judge Ho's excellent concurrence, which states:

> To be sure, not every attorney task will ultimately pay off for the client, even amongst the most conscientious of counsel. A legal theory might seem genuinely promising at the outset, but ultimately bear no fruit. Attorney time may be reasonably spent, even if it does not actually result in client value. […]
>
> The overarching question that court should ask in such circumstances is whether the attorney expended the time in a good faith pursuit of value for the client—or was instead engaged in churning attorney fees. If the former, the time may be awarded even though it ultimately proved fruitless. If the latter, the churned time should be denied.

*Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 262-63 (5th Cir. 2018) (Ho, J., concurring).

Here, there is no evidence that Plaintiff pursued the claim in bad faith, for an excessive period of time, or to artificially inflate attorney's fees. Indeed, Plaintiff only spent approximately 2.5 pages out of its 27 pages of summary judgment briefing discussing willfulness and spent fewer than five minutes discussing willfulness at oral argument. Nonetheless, Plaintiff will agree to reduce the requested attorney's fees of Ms. Arbuckle by .6 hours to account for time unsuccessfully spent briefing the issue and for the fewer than five minutes spent discussing the issue with the Court at oral argument.

## B. Reasonableness of Rates

Because the FLSA promotes "enforcement of important federal labor policies," courts "interpret its attorney's fees provisions following the principles governing the award of such fees under § 1988." *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992). And the Supreme Court has

made clear that fee awards in such cases are to be "governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and not be reduced because the rights involved may be nonpecuniary in nature." *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986). So rates charged for other types of litigation (especially employment litigation) are relevant for setting a reasonable rate in this case. *Id.*

This Court noted the Southern District of Texas covers a lot of ground and contains some diverse markets. Doc. 111 at 5. To be sure, the Court is right. "Hourly rates are to be computed according to the prevailing market rates in the relevant legal market. The relevant legal market, in turn, is generally the community in which the district court sits." *Alvarez v. McCarthy*, No. 20-50465, 2022 WL 822178, at *3 (5th Cir. Mar. 18, 2022) (cleaned up). The relevant community here is the "Houston metropolitan area (which includes the Galveston division)." Doc. 111 at 5; https://www.whitehouse.gov/wp-content/uploads/2020/03/Bulletin-20-01.pdf (noting the "Houston-The Woodlands-Sugar Land, TX" metropolitan statistical area (MSA) includes Galveston).

Even Defendant's evidence shows the Houston MSA (which includes Galveston) has the highest hourly rates in the Southern District of Texas. *See* Texas State Bar, *2019 Income and Hourly Rates* (2020)[2] (showing attorney rates are higher in the Houston MSA than in the Corpus Christi and South Texas MSAs). In other words, the other Southern District of Texas markets would only drag down the average for attorney fee rates. Therefore, rates that are reasonable for the Southern District of Texas as a whole are by definition reasonable in the District's most expensive market.

---

[2] Like the Fifth Circuit, Plaintiff is "mindful of the Fact Sheet's probative limitations[.]" *Alvarez*, 2022 WL 822178, at *5. However, Plaintiff cites the survey for something that shouldn't be controversial: Hourly rates are higher in the Houston MSA than they are in other MSAs in the Southern District of Texas. Thus, the Fact Sheet's obvious shortcomings (*e.g.,* its age, lack of specificity, and low response rate) are less important given the limited purpose here. *Cf. Miniex v. Houston Hous. Auth.*, No. CV 4:17-0624, 2019 WL 4920646, at *4 (S.D. Tex. Sept. 13, 2019) (rejecting the survey's usefulness in setting rates for particular attorneys in a particular case).

Plaintiff provided testimony showing their proposed rates were "reasonable and consistent with the customary hourly rates charged by lawyers with similar skill and experience for legal services in the United States District Court for the Southern District of Texas." Doc. 95-1 at Declaration of Attorney Allen R. Vaught, ECF Page 20, ¶ 5. This included citations to, inter alia, an affidavit from Houston attorney Phillip B. Dye, Jr., requesting a "discounted" hourly rate of $390 for a 3-year lawyer in a case involving an alleged breach of an employment agreement. *Id.* at ECF Page 26, ¶ 26. Plaintiff established knowledge of "the rates charged by other lawyers" based on decades of experience in employment law "in this market[.]" Doc. 95-2 at Declaration of Richard J. (Rex) Burch, ECF Page 4, ¶ 11. Plaintiff's evidence showed the requested rates are "reasonable and consistent with the customary hourly rates" (Doc. 95-1, ECF Page 21, ¶ 25-28) or "below the market rate for a lawyer of reasonably comparable skill, experience, and reputation." Doc, 95-2 at ECF Page 3, ¶ 11.

And we now know Defendant's lead defense counsel, licensed in 2010, was billing $625 an hour, in Houston, back in 2021:

Case 21-31070   Document 282-2   Filed in TXSB on 07/21/21   Page 1 of 2

**EXHIBIT B**

**SUMMARY OF TIMEKEEPERS INCLUDED IN THIS FEE APPLICATION**

| NAME | TITLE OR POSITION | DEPARTMENT GROUP OR SECTION | DATE OF FIRST ADMISSION[1] | FEES BILLED IN THIS APPLICATION | HOURS BILLED IN THIS APPLICATION | HOURLY RATE BILLED | | NUMBER OF RATE INCREASES SINCE CASE INCEPTION |
|---|---|---|---|---|---|---|---|---|
| | | | | | | IN THIS APPLICATION | IN FIRST INTERIM APPLICATION | |
| Benson, Glenn S | Partner | Litigation | 1993 | $33,962.50 | 47.50 | $715 | $715 | 0 |
| Donaho, Thomas A | Partner | Litigation | 2011 | $19,392.00 | 30.30 | $640 | $640 | 0 |
| Esmont, Joseph M | Partner | Bankruptcy | 2008 | $15,288.00 | 27.30 | $560 | $560 | 0 |
| Geyer, Tiffany Payne | Partner | Bankruptcy | 2000 | $2,178.00 | 4.40 | $495 | $495 | 0 |
| Grant, Ashlee C. | Partner | Employment | 2010 | $312.50 | 0.50 | $625 | $625 | 0 |

*See In re: Entrust Energy, Inc.*, Case No. 21-31070 (S.D. Tex) at ECF 282-2, p. 1. Her Houston colleagues licensed in 2011 (www.bakerlaw.com/ThomasADonaho) and 2018

(www.bakerlaw.com/AlexandraLTrujillo) were billing $640 and $425 an hour, respectively. *Id.*[3]

Current Baker Hostetler employment lawyers licensed in 1995 (www.bakerlaw.com/MarkDTemple)[4]

and 2006 (www.bakerlaw.com/PeterJStuhldreher), were paid a "blended" hourly rate of $450 for an

FLSA related suit in 2020. *See Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, No. CV H-18-

2840, 2020 WL 13413547, at *4 (S.D. Tex. July 24, 2020).[5] By comparison, Plaintiff's "blended"

hourly rate—two years later and only paid on a contingent basis—is $436.34 an hour.

Nonetheless, Defendant insists "the highest hourly rate that should be approved in this case

is approximately $325 for Mr. Burch [licensed in 1997] and lower rates for Mr. Prieto [2008] and Ms.

Arbuckle [2011]." Doc. 104 at 5.  Defendant makes the following arguments: (1) The Court should

ignore the Houston MSA, and focus only on "Galveston" rates; (2) Plaintiff's testimony is "self-

serving" should be ignored; and (3) Plaintiff's proposed rates are high (even though they are lower

than defense counsel's, usually by quite a bit). Plaintiff respectfully disagrees.

### 1. **The Houston metropolitan area is the "relevant community."**

This Court recently discussed the standards for defining the "relevant community." Doc.

111 at 5 (citing *Gill v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-1166-DAE, 2018 WL 4677902, at

*2 n. 1 (W.D. Tex. July 19, 2018)). Plaintiff agrees the "relevant community" is the "Houston

metropolitan area (which includes the Galveston division)." *Id.*  This is supported by the *Gill*

---

[3] While Ms. Grant's colleagues are in the "Litigation" department rather than the "Employment" department, FLSA case to "governed by the same standards which prevail in other types of equally complex Federal litigation" and should "not be reduced because the rights involved may be nonpecuniary in nature." *Rivera*, 477 U.S. at 575 (discussing standards for § 1988 fee awards); *Lyle*, 954 F.2d at 988 (confirming the same standards apply to FLSA cases).

[4] Because only the "blended" rate is available, it is unclear what Mr. Temple's rate was. However, Mr. Temple was billing $625 an hour for ERISA work way back in 2015. *See Romano Woods Dialysis Center v. Admiral Linen Service, Inc.,* Case 4:14CV01125 (S.D. Tex.) at ECF 62-1, ¶ 10. Plaintiff's counsel know Mr. Temple is a fine lawyer. Indeed, it because the undersigned considers Mr. Temple to be an "above average" attorney that his rate is properly considered for comparison.

[5] The *Sanchez Oil* case was originally known as *Langren v. Sanchez Oil & Gas Corp.*, an FLSA case where the undersigned served as counsel. *See* No. CV H-18-2840 (S.D. Tex) at ECF 1.

decision cited by this Court and Defendant. While *Gill* refers to the "city" where the court is located, Judge Chestney was clearly not suggesting city limit signs are controlling. For example, the *Gill* opinion states the Texas State Bar "Rate Reports … break down median rates by city, not judicial district." *Gill*, 2018 WL 4677902, at *2 n. 1. But contrary to what Defendant suggests, "city" doesn't actually refer to things within a particular "city." Instead, the "Rate Reports" break down rates by MSA, such as the Houston-The Woodlands-Sugarland MSA that, again, includes Galveston.[6]

| Region |
|---|
| All Metropolitan Regions |
| Houston-The Woodlands-Sugarland MSA |
| Dallas-Fort Worth-Arlington MSA |
| Austin-Round Rock MSA |
| San Antonio-New Braunfels MSA |
| El Paso MSA |
| Corpus Christi MSA |
| Beaumont-Port Arthur MSA |
| Central Texas MSAs |
| East & NE Texas MSAs |
| South Texas MSAs |
| West Texas MSAs |

The point was not that "Houston" rates must be parsed out from "Bellaire" or "West University Place" rates (even though they are all separate cities). Instead, *Gill* sought to explain what attorneys charge in El Paso, for example, may not be particularly instructive for what attorneys charge in San Antonio:



---

[6] *Gill* refers to the 2015 Rate Report (excerpted above). It can be found here: https://www.texasbar.com/AM/Template.cfm?Section+Demographic_and_Economic_Trends&Template=/CM/contentDisplay.cfm&ContentID=34182

*Gill*, 2018 WL 4677902, at *2 n. 1 (noting the Western District if "geographically vast" with many different "legal markets"). Here, we are talking about the Houston legal market. *See Jane Roe/Rachel V. Rose v. BCE Technology Corp.*, 2014 WL 1322979, at *3 (S.D.Tex.2014) (even a decade ago, "courts in and around Houston have found hourly rates between $200 and $600 to be reasonable after considering the experience of the lawyer, the reputation of the firm, and the complexity of the case.") (emphasis added).

### 2. "Self-Serving" is not a basis for ignoring Plaintiff's evidence.

While Defendant complains Plaintiff's declarations are "self-serving," the reality is that any evidence offered in support of party's own position "will inevitably appear 'self-serving.'" *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 161 (5th Cir. 2021). Therefore, "self-serving evidence may not be discounted on that basis alone." *Id.* (citing *Bargher v. White*, 928 F.3d 439, 445 (5th Cir. 2019) ("Simply being 'self-serving,' however, does not prevent a party's assertions from creating a dispute of fact.") and *INet Airport Sys.*, 819 F.3d at 253 n.14; *see also Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (collecting cases and holding that "[a] non-conclusory affidavit can create genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated")). *Id.*

### 3. Plaintiff's proposed rates are reasonable.

As set forth above, Plaintiff's request rates are lower than those being charged by defense counsel for similar work in the Houston metropolitan area. In addition, several surveys of attorney fee rates support Plaintiff's proposed rates. For example, the 2020 Partner Compensation Survey conducted by Major, Lindsey & Africa shows the average partner billing rate in Houston was $880. *See* Jeffrey A. Lowe, 2020 Partner Compensation Survey (MLA 2020) at 61.[7] The average billing rate

---

[7] This study is available at: https://www.acc.com/sites/default/files/2021-02/MLA%202020%20Partner%20CompensationSurvey.pdf

partners performing labor and employment work was $656 an hour. Plaintiff's average billing rate is approximately $436 an hour.

Similarly, the Texas Employment Lawyers Association published a 2021 survey reflecting the "average rate" for lawyers in "South Texas" (the Southern District of Texas) was $623.74 for attorneys licensed in the 1990s (like Mr. Burch). *See* Exhibit 1 at p. 60. Similarly, average rates for attorneys licensed in the 2000s (like Mr. Prieto) and the 2010s (like Ms. Arbuckle) were $577.23 and $477.41 respectively. *Id.* at pp. 76 & 90. The report gives specific citations to cases in which specific rates were awarded to particular attorneys. *Id.* at, *e.g.*, p. 62 (discussing public submissions by Sean Becker of Vinson & Elkins).

Finally, this Court recognized nearly a decade ago that "hourly rates between $200 and $600 [are] reasonable after considering the experience of the lawyer, the reputation of the firm, and the complexity of the case." *See Jane Roe/Rachel V. Rose v. BCE Technology Corp.*, 2014 WL 1322979, at *3 (S.D.Tex.2014) ("Courts in and around Houston have found hourly rates between $200 and $600 to be reasonable after considering the experience of the lawyer, the reputation of the firm, and the complexity of the case."). Even looking at FLSA cases in Galveston specifically, there is support for the rates requested by Plaintiff's counsel. *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 385 (S.D. Tex. 2016) (awarding 1994 licensee Rhona Wills $500 an hour).

## C.   *Johnson* Factors

### 1.   Degree of Success

Defendant does not object to Plaintiff's counsel's assessment of the *Johnson* factors, except with respect to the degree of success Plaintiff obtained.

Defendant makes much of the fact that the Court did not make a finding of Defendant's willfulness and argues that this merits a substantial downward departure both from the requested lodestar and under the *Johnson* factors. However, this is not permissible. *See Saizan v. Delta Concrete*

*Prods. Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006) ("The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting.")

Here, Plaintiff's counsel agreed to make reductions to the lodestar to account for time billed in pursuing claims of willfulness, which was not a significantly pursued claim. Again, contrary to Defendant's claim that Plaintiff "devoted a significant amount of their briefing and argument on summary judgment on the issue of willfulness," (ECF No. 104, p. 19, Br. p. 13) Plaintiff only spent approximately 2.5 pages out of its 27 pages of summary judgment briefing discussing willfulness, and spent fewer than five minutes discussing willfulness at oral argument. Plaintiff's counsel, Ms. Arbuckle, has agreed to reduce her fee by .6 hours in connection with the willfulness issue. Consequently, incorporating that consideration into the *Johnson* factors would be inappropriate per *Saizan*.

### 2.   Proportionality

Defendant also argues that Plaintiff's requested attorney's fees are disproportionate to the damages awarded. However, as Defendant recognizes, there is no requirement that fees in an FLSA case be proportionate to a plaintiff's recovery. *See Hobbs v. EVO Inc.*, 7 F.4th 241, 260 (5th Cir. 2021) ("Moreover, this Court "ha[s] consistently emphasized that 'there is no *per se* requirement of proportionality in an award of attorney fees.'" (quoting *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016) (in turn quoting *Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991)))); *Saizan*, 448 F.3d at 800-02.

As recently held by Judge Boyle in the Northern District of Texas:

Due to the nature of the FLSA attorneys' fee provision, which provides an incentive for attorneys to take up meritorious claims that would ordinarily result in relatively small awards, *Fegly v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), the difference in the results achieved and the attorneys' fees awarded is likely to be substantial and large differences between damages and fees should be expected. *See Saizan*, 448 F.3d at 800-02. This is because a typical FLSA claimant is an hourly employee and the attorneys who represent them usually charge substantially more per hour than their clients' overtime pay rate. Therefore, "there is no per se proportionality rule" for relationship

between the amount of damages awarded and the amount secured in attorneys' fees."
*Id.* at 802.

*Tovar v. Southwestern Bell Tel., L.P.*, No. 3:20-CV-1455-B, 2022 WL 2306926, at *6 (N.D. Tex. June 27, 2022) (approving attorney's fees in the amount of $47,907.93 where damages awarded were only $1,826.40 split between three claimants (nearly 23 times the damages obtained)). Thus, even if there were a requirement that plaintiff's attorney's fees in FLSA cases be proportionate to a plaintiff's recovery, the fees as originally requested (even before the deductions agreed to above) would pass any proportionality test. In *Gurule*, for instance, the Fifth Circuit affirmed a fee award of $25,089.30 even though the plaintiff only recovered $745.21 (a 33:1 ratio). 912 F.3d at 257-58.

Here, the fees as originally requested (prior to the agreed deductions above), $194,730.00, are only approximately double the amount of damages awarded, $95,559.00, which is entirely reasonable and proportionate. Defendant's Response misleadingly compares the requested fees with the backpay award ($47,779.50) to Plaintiff and Opt-in Plaintiff, as though the Court had not awarded liquidated damages. (ECF No. 104, p. 24, Br. p. 18 (claiming fees requested were four times the damage award).) However, it is not proper to omit *half* of the damages awarded by the Court to create the false impression that Plaintiff's requested fees are disproportionate. Defendant's argument on this front is meritless.

### 3.  COSTS

Defendant claims that mediation and delivery expenses should be denied because the cases cited by Plaintiff in support of awards of such expenses "have been severely criticized and soundly rejected," however Defendant only cites to one case in support of its contention. (ECF No. 104, p. 25, Br. p. 19 (citing other cases which were decided prior to those cited by Plaintiff).) Rather, there is an acknowledged split of opinion,[8] and many courts continue to find that such expenses are

---

[8]    *See, Hobbs v. Petroplex Pipe & Constr., Inc.*, No. MO:17-CV-00030-DC, 2019 WL 13079781, at *9 (W.D. Tex. May 23, 2019) ("The Court recognizes that various district courts have refused to allow

reimbursable. *See, e.g.*, *Robinson v. Nexion Health at Terrell Inc.*, No. 3:12-CV-3853-L-BK, 2017 WL 5891790, at *8 (N.D. Tex. Nov. 1, 2017) (collecting cases). So, the issue of Plaintiff's entitlement to recover the mediation fee and delivery fees in this case is not as open and shut ad Defendant postures.

Indeed, recovery of the mediation fee is particularly appropriate here as the Parties agreed upon a full day mediation, but Defendant did not negotiate in good faith and walked out prior to the agreed upon conclusion of the mediation session. As a result, the Court should favor courts supporting the less rigid view of recovery of case expenses and order Defendant to compensate Plaintiff for his case expenses.

**4.  CONCLUSION AND PRAYER**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant its Motion for Attorney's Fees (ECF No. 95) and enter judgment with respect to the fees and costs, subject to the agreed alterations in this Reply.

Dated:  July 8, 2022

Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Rex Burch*
        Richard J. (Rex) Burch
        Texas Bar No. 24001807
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**AND**

Ricardo J. Prieto
State Bar No. 24062947
Fed. ID No. 1001658
rprieto@eeoc.net
Melinda Arbuckle

---

the recovery of costs not listed in § 1920. […] Nonetheless, this Court sides with district courts that have allowed the recovery of expenses relying on statutory authorization under Title VII, the ADEA, and the FLSA").

State Bar No. 24080773
Fed. ID No. 2629125
marbuckle@eeoc.net
SHELLIST LAZARZ SLOBIN LLP
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
(713) 621-2277 – Telephone
(713) 621-0993 – Facsimile

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

On July 8, 2022, I filed the foregoing document with the Clerk of Court for the Southern District of Texas using the CM/ECF method, which has served all counsel of record with a true and correct copy of this document electronically.

*/s/ Rex Burch*
Richard J. (Rex) Burch