United States District Court
Southern District of Texas
**ENTERED**
August 07, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| THE ESTATE OF TERRY GENTRY, *et al.*, § § § Plaintiffs. § § V. § § HAMILTON-RYKER IT § SOLUTIONS, LLC, § § Defendant. § § § § | CIVIL ACTION NO. 3:19-cv-00320 |

## MEMORANDUM AND RECOMMENDATION

On March 4, 2022, I issued a Memorandum and Recommendation on cross-motions for summary judgment. I concluded that (1) Defendant Hamilton-Ryker IT Solutions, LLC ("HR-IT") is liable for Plaintiffs' unpaid overtime wages; (2) no exemption excuses HR-IT's failure to pay Plaintiffs overtime; (3) Plaintiffs are entitled to liquidated damages; (4) HR-IT did not willfully violate the Fair Labor Standards Act ("FLSA"), so the two-year limitations period applies in this case; (5) Plaintiff The Estate of Terry Gentry ("Gentry") is entitled to $28,659 (consisting of unpaid overtime wages of $14,329.50 and liquidated damages of $14,329.50); and (6) Plaintiff Marc Taylor is entitled to $66,900 (consisting of unpaid overtime wages of $33,450.00 and liquidated damages of $33,450.00). *See* Dkt. 87 at 16. United States District Court Judge Jeffrey V. Brown adopted my Memorandum and Recommendation in its entirety.

1

*See* Dkt. 91.[1] Judge Brown also gave Plaintiffs permission to move for an award of fees[2] and costs.

---

[1] HR-IT appealed the district court's ruling to the Fifth Circuit. On July 24, 2023, the Fifth Circuit issued an opinion affirming the judgment of the district court. *See Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, No. 22-40219, 2023 WL 4704115 (5th Cir. July 24, 2023). Mandate has yet to issue.

[2] Before I launch into a discussion on the underlying request for fees and costs, let me take a moment to address one of the burning legal questions of our generation: Is the proper term "attorney fees," "attorneys fees," "attorney's fees," or "attorneys' fees?" This is an issue that has kept me up many a night—perhaps because my daughter is majoring in English and minoring in linguistics. I sincerely hope this footnote will let others sleep more soundly.

To begin, I note that I am not the first judge to grapple with whether and how to use an apostrophe and the word "attorney" together. As the Sixth Circuit has explained: "In federal statutes, rules[,] and cases, we find ["attorney fees," "attorneys fees," "attorney's fees," or "attorneys' fees"] used interchangeably, nay, promiscuously." *Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 253 n.1 (6th Cir. 1997). The Fifth Circuit has used all the varied formulations referenced above—and more—from time to time. *See Iscavo Avocados USA, L.L.C. v. Pryor*, 953 F.3d 316 *passim* (5th Cir. 2020) (attorneys' fees); *In re Russell*, 941 F.3d 199, 202, 204 (5th Cir. 2019) (attorney fees); *Davis v. Credit Bureau of the S.*, 908 F.3d 972 *passim* (5th Cir. 2018) (attorney's fees); *Int'l Paper Co. v. Cook*, 985 F.2d 556 (5th Cir. 1993) (attorneys fees). Although the Fifth Circuit has never settled on a uniform style, one panel did recently note that "[t]here are at least eleven competing terms we could use instead of 'attorney fees.'" *Gahagan v. U.S. Citizenship & Immigr. Servs.*, 911 F.3d 298, 300 n.1 (5th Cir. 2018). The Federal Rules of Civil Procedure offer no solution to this quandary, using both the terms "attorney's fee" and "attorneys' fee." . *Compare* FED. R. CIV. P. 54(d)(2) (discussing the award of attorney's fees), *with id.* advisory committee's note to 1993 amendment (discussing the award of attorneys' fees). Congress also cannot seem to adhere to a single spelling. *See* 28 U.S.C. § 1927 (authorizes an award of "attorneys' fees" against any attorney who unreasonably and vexatiously multiplies a proceeding); *id.* § 1447 (authorizes an order remanding a case to award "attorney fees"); 29 U.S.C. § 216(b) (authorizes an award of "attorney's fees" to a prevailing FLSA plaintiff).

With no clear-cut directive from the Fifth Circuit, federal statutes, or the federal rules, I turn to the highest court in the land. I am sure to get a simple and straightforward answer from the United States Supreme Court, right? Not exactly. The Supreme Court's Style Guide contains the style preferences of the Supreme Court used by its Reporter of Decisions when preparing the high court's official opinions. It provides: "Use the singular possessive case 'attorney's fees' (not 'attorneys'') in the term 'attorney's fees,' even though in the particular case more than one attorney may be involved." OFF. OF THE REP. OF DECISIONS, THE SUPREME COURT'S STYLE GUIDE § 10.3 (Jack Metzler ed., 2016). Despite this seemingly unambiguous language, the Supreme Court is known to use the term

Plaintiffs have filed a Motion for Entry of Attorneys' Fees and Costs Pursuant to the FLSA. Dkt. 95. In that motion, Plaintiffs seek attorneys' fees in the amount of $194,730.00 and costs in the amount of $2,624.33. HR-IT opposes the award of these amounts. *See* Dkt. 104. Although HR-IT recognizes that the FLSA requires that prevailing plaintiffs collect reasonable attorneys' fees and costs, HR-IT argues that the amounts sought by Plaintiffs are wildly excessive.

## LEGAL STANDARD

Under the FLSA, a successful plaintiff is entitled to an award of attorneys' fees and costs. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The Fifth Circuit has unequivocally held that "[r]easonable attorneys' fees are mandatory" when a court

---

"attorneys' fees" in some of its decisions. *See CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 110 (2012) (Ginsburg, J., dissenting) (referring to attorneys' fees); *Brown v. Ent. Merchs. Ass'n*, 565 U.S. 809 (2011) (same). What am I to do?

Before giving up on this quest, I turn to noted lawyer/grammarian/lexicographer Bryan Garner. He observes:

> **attorney's fees; attorneys' fees; attorney fees; counsel fees.** The first of these now appears to be prevalent. *See* Attorney's Fee Act, 42 U.S.C. § 1988 (1988). The plural possessive *attorneys' fees* is just as good, and some may even prefer that term in contexts in which there is clearly more than one attorney referred to. *Attorney fees* is inelegant but increasingly common. It might be considered a means to avoid having to get the apostrophe right. (But cf. the phrase *expert-witness fees*.) *Counsel fees* is another, less-than-common variant.
>
> The only form to avoid at all costs is \**attorneys fees*, in which the first word is a genitive adjective with the apostrophe wrongly omitted.

BRYAN GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 94 (3d ed. 2011).

In short, there is no one right way to reference the fees awarded for work done by an attorney. As the old saying goes, "different strokes work for different folks." My preference going forward is as follows: I will use "attorney's fees" to refer to fees sought by one lawyer and "attorneys' fees" to refer to fees sought by more than one lawyer. I will eschew entirely "attorney fees" and "attorneys fees." Now, back to the show.

finds that an employer has violated the FLSA. *Weisel v. Singapore Joint Venture, Inc.*, 602 F.2d 1185, 1191 n.18 (5th Cir. 1979). "Although the district court has discretion to determine what is reasonable, the court does not have discretion to decline to award attorney's fees to a prevailing party without making such a determination." *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016).

The Fifth Circuit "use[s] the lodestar method to calculate an appropriate attorney's fee award under the FLSA." *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). Under the lodestar method, the district court "multipl[ies] the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for [the] work." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). "The court should exclude all time that is excessive, duplicative, or inadequately documented." *Jimenez v. Wood County*, 621 F.3d 372, 379–80 (5th Cir. 2010). For purposes of an award of attorneys' fees in an FLSA overtime suit, "[t]here is a strong presumption of the reasonableness of the lodestar amount." *Black*, 732 F.3d at 502.

"[A]fter calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set" out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Black*, 732 F.3d at 502 (quotation omitted). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount of damages involved and the results (both monetary and equitable) obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the undesirability of the case; (11) the nature and length of the professional

relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717–19.

"Determining a reasonable attorney's fee is a matter that is committed to the sound discretion of a trial judge, . . . but the judge's discretion is not unlimited." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010) (cleaned up). The party seeking attorneys' fees bears the burden of demonstrating the reasonableness of the fees sought, including any adjustment or enhancement. *See Black*, 732 F.3d at 502. A court abuses its discretion when it awards attorneys' fees without "a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement." *Perdue*, 559 U.S. at 558.

## ANALYSIS

I will consider Plaintiffs' request for attorneys' fees and costs separately.

### A.   ATTORNEYS' FEES

My first task in evaluating Plaintiffs' request for attorneys' fees is to calculate the lodestar. To do that, I must carefully evaluate Plaintiffs' proposed hourly rates and then assess the reasonableness of the hours billed by Plaintiffs' counsel. Once the lodestar is established, I will consider the *Johnson* factors to determine whether an upward or downward departure from this amount is warranted.

#### 1. Reasonable Hourly Rates

Plaintiffs seek the following hourly rates for the following attorneys: Richard J. (Rex) Burch: $650; Richard J. Prieto: $450; and Melinda Arbuckle: $400. Mr. Burch is the managing shareholder at Bruckner Burch PLLC. He has focused the vast majority of his roughly 25-year legal career on representing individuals in wage and hour cases across the country. Mr. Prieto is a 2008 law school graduate who is Board Certified in Labor and Employment law. For the past 10 years, Mr. Prieto has been a partner at Shellist Lazarz Slobin, LLP. Ms. Arbuckle is also a partner at Shellist Lazarz Slobin, LLP. She focuses her legal practice on FLSA cases and has been practicing for 12 years.

5

In support of the proposed hourly rates, Plaintiffs have submitted declarations from Mr. Burch, Ms. Arbuckle, and Allen R. Vaught. In his declaration, Mr. Burch contends that he is aware of the rates charged by other lawyers "in this market" and "$650 an hour is below the market rate for a lawyer of reasonably comparable skill, experience, and reputation." Dkt. 95-2 at 4. Ms. Arbuckle explains that she currently bills at a rate of $500 per hour for non-contingency legal work but will seek only a $400 per hour fee in this case. Ms. Arbuckle also offers her view that Mr. Prieto's $450 hourly "billing rate is especially reasonable given his board certification." Dkt. 95-1 at 4. Mr. Vaught is an FLSA litigator with more than 23 years of legal experience in the State of Texas. Mr. Vaught did not work on this case but offers his view that Ms. Arbuckle's requested hourly rate of $400 "is reasonable and consistent with the customary hourly rates charged by lawyers with similar skill and experience for legal services in the United States District Court for the Southern District of Texas." *Id.* at 20.

As both parties recognize, it is well-settled that attorneys' fees are to be calculated at the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In requesting fees and expenses, Plaintiffs take the position that "the relevant community for fees is district-wide—not by city or division." Dkt. 95-1 at 20. I disagree. As I previously explained:

> The Southern District of Texas is comprised of a huge swath of land (44,000 square miles) with legal markets as diverse as the population that inhabits the land. Based on my experience as a practitioner for roughly 25 years in the Southern District of Texas before taking the bench, not to mention my four years on the bench, I am convinced that the legal markets across the Southern District of Texas—Laredo, Brownsville, McAllen, Corpus Christi, Victoria, Galveston, and Houston—are far from homogenous. It is ludicrous to suggest that a reasonable hourly rate in Brownsville, for example, is comparable to the hourly rate charged by an attorney in the Houston metropolitan area (which includes the Galveston division).

*Gentry v. Hamilton-Ryker IT Sols., LLC*, No. 3:19-CV-00320, 2022 WL 2236286, at *3 (S.D. Tex. June 22, 2022); *see also Tollett v. City of Kemah*, 285 F.3d 357,

6

368 (5th Cir. 2002) ("[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." (quotation omitted)). I conclude that the relevant community here is the Houston metropolitan area, which includes the Galveston division.

Ideally, Plaintiffs would present me with a declaration expressly stating that the proposed hourly rates are within the range of prevailing market rates in the Houston metropolitan area. Plaintiffs do not do this. Instead, Mr. Burch's declaration simply refers to the $650 rate as appropriate "in this market," Dkt. 95-2 at 4, and Mr. Vaught contends that Ms. Arbuckle's hourly rate is consistent with billing rates charged by lawyers in "the Southern District of Texas." Dkt. 95-1 at 20. Plaintiffs argue that this evidence is sufficient because HR-IT has provided data from the State Bar of Texas establishing that the median hourly rate for the Houston-The Woodlands-Sugar Land metropolitan statistical area ("MSA") is higher than anywhere else in the Southern District of Texas. Because "the other Southern District of Texas markets would only drag down the average for attorney fee rates," Plaintiffs posit, "rates that are reasonable for the Southern District of Texas as a whole are by definition reasonable in the District's most expensive market." Dkt. 114 at 9. I concur with that explanation. Accordingly, I find that Plaintiffs have provided sufficient evidence to support the respective hourly rates sought for Mr. Burch, Mr. Prieto, and Ms. Arbuckle.

In opposing an award of attorneys' fees based on Plaintiffs' proposed hourly rates, HR-IT argues that the requested rates are unreasonable. In HR-IT's estimation, "the highest hourly rate that should be approved in his case is approximately $325 for Mr. Burch and lower rates for Mr. Prieto and Ms. Arbuckle." Dkt. 104 at 11. For support, HR-IT points to the 2019 Income and Hourly Rates Report compiled by the State Bar of Texas ("Hourly Rates Report"), which reflects that the median hourly rate for the Houston-The Woodlands-Sugar Land MSA is $297 per hour. *See id.* at 11 & n.4. Although the Hourly Rates Report contains interesting data, it is far from the holy grail regarding hourly rates. The

7

findings are based entirely on survey results from Texas lawyers and do not distinguish between the reported billing method: hourly fees, flat rates, contingency fees, or discounted fees for volume clients. Additionally, "[t]he State Bar data, which only report median rates, do not account for the rate that might be reasonably charged by an attorney with significant experience or expertise in the field." *Tovar v. Sw. Bell Tel., L.P.*, No. 3:20-CV-1455, 2022 WL 2306926, at *3 (N.D. Tex. June 27, 2022). It is particularly telling that the first page of the Hourly Rates Report specifically states that "the income and hourly rate information is *not* intended to set appropriate attorney fees or incomes." STATE BAR OF TEXAS, HOURLY RATES REPORT 1 (2019) (emphasis added). I thus discount the Hourly Rates Report.

Considering the attorney declarations supporting the application for attorneys' fees, as well as my familiarity—both as a lawyer and judge for the past 29 years—with the market for attorneys' fees in the Houston/Galveston area, I conclude that $650 is a reasonable rate for Mr. Burch; $450 is a reasonable rate for Mr. Prieto; and $400 is a reasonable rate for Ms. Arbuckle.

### 2. Reasonable Hours Expended

The next step in the lodestar analysis is to determine the number of hours reasonably spent on the case. "The party seeking attorneys' fees must present adequately documented time records to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented. . . . The hours surviving this vetting process are those reasonably expended on the litigation." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

In their motion for fees and costs, Plaintiffs seek reimbursement for 38.2 hours expended by Mr. Burch, 22 hours expended by Mr. Prieto, and 400 hours expended by Ms. Arbuckle. HR-IT argues that I should significantly reduce these hours for a litany of reasons: (1) some of the time entries are vague; (2) the time entries are excessive; (3) travel time should be eliminated; (4) time entries pertaining to clerical work should be deducted; (5) time spent on unsuccessful

claims and issues unrelated to this case should be eliminated; (6) excessive fees for intra-office conferences and conferences with co-counsel should be reduced; (7) block billing and duplicate time entries should be deducted; and (8) all of Mr. Prieto's fees are unrecoverable because they are vague and duplicative. I will address these concerns one-by-one. Before I do so, let me simply note that I have carefully reviewed each entry on the billing records provided to me.

### a. *Vagueness*

First, HR-IT claims that many of Plaintiffs' counsel's billing records are impermissibly vague. In addressing this objection, I am cognizant "that practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 (5th Cir. 1995). Nonetheless, a district court should disallow time entries as "vague" when they are so "unilluminating that they preclude[] meaningful review of whether particular hours were reasonably expended on this litigation." *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir. 1997). After reviewing Plaintiffs' counsel's time entries, I find that the descriptions provided by Plaintiffs' counsel are short but sufficient for me to assess whether the hours requested are reasonable. I do not believe any hours should be deducted solely on the basis of vagueness.

### b. *Excessiveness*

HR-IT next argues that "Plaintiffs' counsel seeks fees for excessive amounts of time on a particular task, including substantial amounts of time supposedly spent 'drafting' documents that are nearly identical to documents Plaintiffs' counsel . . . have filed in other cases." Dkt. 104 at 15. Noting that Plaintiffs' counsel are all experienced FLSA lawyers, HR-IT takes issue with billing for forms that had been used in previous cases. Understandably, "[c]ourts have substantially reduced attorney's fee awards for work product that was copied or derived from prior work product in similar cases." *Furlow v. Bullzeye Oilfield Servs., LLC*, No. SA-15-CV-

9

1156, 2019 WL 1313470, at *6 (W.D. Tex. Jan. 3, 2019). Without question, some of the time billed by Plaintiffs' counsel seems unnecessary because the time was spent, in effect, recycling form pleadings used in previous matters. A reduction of 33.0 hours for Ms. Arbuckle is appropriate.

### c. Travel Time

As a general rule, district courts within the Fifth Circuit are unwilling to award fees for travel time unless legal work was performed while traveling. *See Alex v. KHG of San Antonio, LLC*, 125 F. Supp. 3d 619, 627 (W.D. Tex. 2015). This rule is hardly surprising. HR-IT maintains that the 6.7 hours related to Ms. Arbuckle's travel to and from the initial status conference in this case and time spent making her travel arrangements should be eliminated. Plaintiffs agree to this reduction. As a result, I will reduce Ms. Arbuckle's billed time by 6.7 hours.

### d. Clerical Work

HR-IT insists that Plaintiffs' counsel's hours should further be reduced because many of the billing entries are for tasks that are clerical in nature. *See Wyndham Props. II, Ltd. v. Buca Tex. Rests., LP*, No. 4:22-CV-00166, 2023 WL 2392090, at *5 (N.D. Tex. Mar. 7, 2023) ("Clerical work is not recoverable in an award of attorneys' fees." (quotation omitted)). As the Fifth Circuit has explained, a district "[c]ourt should consider whether the work performed was legal work in the strict sense or was merely clerical work that happened to be performed by a lawyer." *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 (5th Cir. 1986) (quotation omitted).

Plaintiffs concede that clerical entries are not recoverable and propose that Ms. Arbuckle's fees be reduced $3,960.00 (9.9 hours) in consideration of clerical work she performed. After reviewing all of the time entries, I find this proposed reduction reasonable and will strike 9.9 hours from the time Ms. Arbuckle seeks. I also find a 0.1 hours reduction in Mr. Burch's time appropriate for clerical purposes.

### *e. Unsuccessful Claims and Unrelated Issues*

HR-IT further claims that Plaintiffs' counsel's time should be sharply reduced for time allegedly spent on unsuccessful claims and unrelated issues. In particular, HR-IT contests time Plaintiffs' counsel spent (1) addressing the issue of willfulness during the summary judgment process because the Court ultimately granted summary judgment to HR-IT on willfulness; (2) opposing HR-IT's request to stay this case pending the outcome of the *en banc* decision of the Fifth Circuit in a related case, *Hewitt v. Helix Energy*; and (3) working with clients on issues unrelated to the FLSA claims raised in this lawsuit.

As a legal matter, a "district court is obligated to scrutinize the billing records carefully and to exclude excessive, duplicative, or otherwise unnecessary entries." *Coleman v. Houston Indep. Sch. Dist.*, No. 98-20692, 1999 WL 1131554, at *3 (5th Cir. 1999). The Fifth Circuit has explained that "there is ample authority for the proposition that a partially prevailing party may recover all reasonably incurred attorney fees, even though the party did not prevail on all claims, as to all defendants, or as to all issues in a matter." *Id.* at *5. "When the successful and unsuccessful claims involve a 'common core of facts' or are based upon 'related legal theories,' then attorney fees incurred in the presentation of unsuccessful claims are recoverable on the theory that they contributed to the plaintiffs' ultimate success." *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). As one Fifth Circuit judge recently observed:

> To be sure, not every attorney task will ultimately pay off for the client, even amongst the most conscientious of counsel. A legal theory might seem genuinely promising at the outset, but ultimately bear no fruit. Attorney time may be reasonably spent, even if it does not actually result in client value.
>
> . . . .
>
> The overarching question that courts should ask in such circumstances is whether the attorney expended the time in a good faith pursuit of value for the client—or was instead engaged in churning attorney fees. If the former, the time may be awarded, even

11

though it ultimately proved fruitless. If the latter, the churned time should be denied.

*Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 262–63 (5th Cir. 2018) (Ho, J., concurring).

Given this legal framework, I am unwilling to reduce the hours Plaintiffs' counsel incurred on the willfulness analysis, especially when such time was unquestionably minimal. The willfulness discussion took up approximately two and a half pages of the summary judgment briefing, and the topic was briefly discussed at oral argument. In my view, such work was reasonable given the circumstances, and Plaintiffs' counsel should not be penalized for failing to succeed on that one, narrow issue. Although futile or wasteful litigation efforts are typically not allowed because such fees cannot be characterized as reasonable, that is not the situation here. Nonetheless, Plaintiffs' counsel has agreed to reduce Ms. Arbuckle's time by 0.6 hours "to account for time unsuccessfully spent briefing the issue and for the fewer than five minutes spent discussing the issue with the Court at oral argument." Dkt. 114 at 8.

Separately, I find no merit in HR-IT's contention that I should slash hours spent by Plaintiffs' counsel on opposing a stay of the case pending *en banc* review by the Fifth Circuit in a related case. In opposing the stay, Plaintiffs' counsel advanced a reasonable strategy that they believed would further their clients' interests. Before I could rule on the stay request, the Fifth Circuit released its long-awaited *en banc* ruling. At this stage, my job is to simply decide whether hours worked by Plaintiffs' counsel were reasonable given the circumstances of the case—not to dissect each strategic decision and play Monday-morning quarterback. No deduction is warranted for hours spent opposing the stay request.

Finally, HR-IT notes that Ms. Arbuckle appears to seek recovery for "four hours of work wholly unrelated to Plaintiffs' claims in this case, including time spent conferring with Gentry on a separate litigation matter, as well as multiple time entries for time spent on calls with and generating fee arrangements for

unidentified prospective clients." Dkt. 104 at 20. Plaintiffs have no answer for this challenge. As a result, I will reduce Ms. Arbuckle's fee request by 4.0 hours.

### f. Intra-Office Conferences and Co-Counsel Conferences

HR-IT also finds fault with the amount of time spent by Plaintiffs' counsel in meetings, conferences, and emails with one another. Although some communication between counsel is expected (and required), I am determined to avoid excessive billing for such communications. Fees for interoffice communications are thus allowed provided there is "not an inordinate number of interoffice conferences, and so long as multiple attorneys do not bill for the same conference." *In re Lopez*, 576 B.R. 84, 103 (Bankr. S.D. Tex. 2017) (quotation omitted). "Lawyers need not provide a detailed explanation of the necessity of the conference or each lawyer's role so long as it is clear from the evidence that such a conference was reasonable and necessary for the case." *Jones v. Portfolio Recovery Assocs. LLC*, No. 1:16-CV-00572, 2020 WL 6480917, at *4 (W.D. Tex. Oct. 26, 2020).

Here, I have undertaken the tedious task of reviewing every entry relating to a communication between Plaintiffs' counsel. All told, I think the entries are, for the most part, completely appropriate. Counsel working together on a case should not have to operate in silos; they should work together in a cooperative fashion to obtain the best possible result for their client. I find that a reduction of 2.6 hours of Ms. Arbuckle's time is proper to account for unnecessary or duplicative intraoffice conferences.

### g. Block Billing and Duplicate Time Entries

According to HR-IT, a further reduction in hours expended by Plaintiffs' counsel is appropriate for block billing and duplicate time entries.

**Block billing:** "Block billing" refers to the disfavored "time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-0752, 2011 WL

13

487754, at *4 (N.D. Tex. Feb. 11, 2011). "Block-billed entries are typically reduced because they lack specificity from which the court can determine their reasonableness and necessity." *In re Trevino*, 648 B.R. 847, 875 (Bankr. S.D. Tex. 2023). "Nevertheless, a reduction for block billing is not automatic." *Humphrey v. United Way of Tex. Gulf Coast*, 802 F. Supp. 2d 847, 864 (S.D. Tex. 2011) (quotation omitted). "[B]efore reducing the fee request based on block billing, the court must evaluate whether the applicant's evidence is adequate to enable it to determine the reasonableness of the hours expended." *Fralick*, 2011 WL 487754, at *5.

I am glad to report that the time entries submitted by Plaintiffs' counsel do not contain the type of block billing that often invites scorn and anguish among members of the judiciary. Yes, there are some time entries that reference two (or possibly three) distinct tasks, but I can still discern the reasonableness of the hours expended by Plaintiffs' counsel. Upon review of the entries deemed to be block billed by Plaintiffs' counsel, I find that a mere 2.8 hours should be subtracted from Ms. Arbuckle's requested time.

**Duplicative Billings:** In determining whether particular hours claimed by Plaintiffs' counsel were reasonably expended, I must also inspect the records for duplicative billings. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 768 (5th Cir. 1996). "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do, may obviously be discounted." *Johnson*, 488 F.2d at 717. HR-IT objects to numerous instances "where multiple counsel bill for the same tasks on the same day or where the same counsel bills for the same tasks twice (such as drafting a court filing, and then 'reviewing' that same court filing after it is filed)." Dkt. 104 at 21. My review of the billing entries does not reveal an alarming number of duplicative entries made by Mr. Burch and Ms. Arbuckle. Sure, Mr. Burch and Ms. Arbuckle both attended a summary judgment hearing, but I do not think it is

unreasonable for the two main lawyers working on the case to attend a dispositive motion hearing. I further note that two of HR-IT's lawyers attended the same hearing. All told, a thorough review and analysis of the billing entries indicates that only 1.1 hours of Ms. Arbuckle's time should be deducted for duplicative billing. I will address Mr. Prieto's time separately.

### h. *Mr. Prieto's Time*

Mr. Prieto billed a total of 22 hours on this matter. Other than assisting with the drafting of the Original Complaint, attending the initial scheduling conference, and attending mediation, *every* one of Mr. Prieto's billing entries is for a review of an email or discovery letter from opposing counsel. Although I certainly believe that a law firm can staff a case with more than one lawyer, there is no rational reason why three partners—and no associates—worked on this case. Mr. Burch and Ms. Arbuckle are excellent lawyers and they did a terrific job advancing their clients' interests. It seems unjust to require HR-IT to pay for hours billed by Mr. Prieto to review emails and discovery letters when he apparently did not make any substantive contributions to the case—at least not as reflected on the billing entries submitted. It is well-established that billed hours that result from the case being "overstaffed are *not* hours 'reasonably expended' and are to be excluded from [the Lodestar] calculation." *Leroy v. City of Houston*, 906 F.2d 1068, 1079 (5th Cir. 1990) (quotation omitted). The 16.4 hours Mr. Prieto spent reviewing emails and discovery letters from opposing counsel must be eliminated.

As for those entries by Mr. Prieto not directly tied to reviewing emails and discovery letters, I find that: (1) the 3.0 hours spent drafting the Original Complaint is duplicative of time entered by Ms. Arbuckle to complete the same task; (2) the 0.6 hours Mr. Prieto billed for attending the initial scheduling is reasonable given that no other member of Plaintiffs' legal team is being compensated for attending the initial scheduling conference; and (3) the 6.0 hours spent attending the mediation is duplicative because Mr. Burch and Ms. Arbuckle attended the mediation as well.

15

Of the 22 hours Mr. Prieto billed on this file, I find that only 0.6 hours of that time should be considered for lodestar purposes.

Based on my findings detailed above, I calculate the lodestar as follows:

|  | Hours Claimed | Hours Reduced | Hours Approved | Rate Approved | Total Fee (Hours Approved x Rate Approved) |
|---|---|---|---|---|---|
| Mr. Burch | 38.2 | 0.1 | 38.1 | $650 | $24,765 |
| Mr. Prieto | 22 | 21.4 | 0.6 | $450 | $270 |
| Ms. Arbuckle | 400 | 60.7 | 339.3 | $400 | $135,720 |

Lodestar: $160,755

### 3. The *Johnson* Factors

Once the lodestar is determined, a district court may adjust the lodestar upward or downward depending on the *Johnson* factors. *See Watkins*, 7 F.3d at 457. "The lodestar, however, is presumptively reasonable and should be modified only in exceptional cases." *Id.* The party seeking an adjustment of the lodestar bears a heavy burden. *See Perdue*, 559 U.S. at 552–53.

HR-IT asserts that the lodestar amount should be adjusted downwards because Plaintiffs obtained a modest recovery. I am not enamored with this argument. To be clear, the two Plaintiffs were awarded a total of $95,559.00 in back-pay and liquidated damages. They unquestionably prevailed on their claim that HR-IT failed to pay them the proper amount of overtime wages to which they were due. This victory did not come easy. They faced a formidable opponent, whose well-respected lawyers fought hard and valiantly on their client's behalf. This was not a case in which the employer simply rolled over and acknowledged liability. HR-IT fought tooth and nail.

The proper lodestar amount ($160,755) is roughly 1.7 times the total award of monetary damages to Plaintiffs. This is far from unusual or unreasonable, especially when we consider that "the purpose of the FLSA attorney fees provision is to [e]nsure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (quotation omitted). "While the most critical factor in determining an attorney's fee award is the degree of success obtained, a low damages award alone should not lead the court to reduce a fee award." *Gurule*, 912 F.3d at 257–58 (cleaned up). Indeed, the Fifth Circuit "ha[s] consistently emphasized that 'there is no *per se* requirement of proportionality in an award of attorney fees.'" *Combs v. City of Huntington, Tex.*, 829 F.3d 388, 396 (5th Cir. 2016) (quoting *Branch-Hines v. Hebert*, 939 F.2d 1311, 1322 (5th Cir. 1991)). In *Gurule*, the Fifth Circuit actually upheld an attorneys' fee award that "was *thirty-three* times [plaintiff's] net recovery." *Gurule*, 912 F.3d at 259.

Although Plaintiffs did not triumph on their claim of willfulness in this case, they prevailed on everything else. At day's end, Plaintiffs obtained a judgment fully compensating them for two years of overtime wages and liquidated damages. In no uncertain terms, Plaintiffs won. An award of $160,755 in attorneys' fees "encourages the vindication of congressionally identified policies and rights" set forth in the FLSA. *Fegley*, 19 F.3d at 1134–35 (cleaned up).

I have weighed each of the *Johnson* factors and find that none of those factors warrant an adjustment to the lodestar in an upward or downward direction.

**B.   COSTS**

The FLSA expressly provides that a prevailing plaintiff is entitled to recover the "costs of the action." 29 U.S.C. § 216(b). Plaintiffs seek a total of $2,624.33 for an award of costs. The breakdown is as follows:

| Date | Description | Amount |
|---|---|---|
| 1/19/21 | Terry Gentry Deposition Transcript | $581.90 |
| 1/19/21 | Marc Taylor Deposition Transcript | $330.80 |
| 3/9/21 | ½ Mediation Fee | $1,575.00 |
| 7/15/21 | Print Costs – Summary Judgment Motion | $51.00 |
| 7/15/21 | Delivery Costs – Chambers Copy of MSJ | $48.88 |
| 3/24/22 | Summary Judgment Hearing Transcript | $36.75 |

Total: $2,624.33

HR-IT concedes that the costs for deposition transcripts, hearing transcripts, and copying are proper, but it challenges Plaintiffs' request to recover $1,575.00 for mediation expenses and $48.88 in delivery costs. HR-IT argues that such costs are not allowed under 28 U.S.C. § 1920, the statutory provision that specifies the types of costs that may be awarded. Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title; and
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Noticeably missing from this list of recoverable costs are mediation fees and delivery expenses.

18

To resolve HR-IT's objection on costs, I must determine whether a prevailing FLSA plaintiff is entitled to recover all out-of-pocket costs or only those taxable under § 1920. In considering this issue, I note that the "Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or contractual authorization to the contrary." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 529 (5th Cir. 2001) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 444–45 (1987)). Tellingly, Plaintiffs do not point to any explicit statutory or contractual authorization that would allow mediation fees and delivery expenses to be assessed as costs in this case. In another FLSA case, the Fifth Circuit vacated a district court's award of costs where certain of the costs—including private process server fees, delivery services, and postage—were not specifically enumerated in § 1920. *See Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1045 (5th Cir. 2010). I think Supreme Court and Fifth Circuit precedent is controlling. As a result, I hold that prevailing plaintiffs in an FLSA case may only recover those costs enumerated in § 1920. *See Hobbs v. EVO Inc.*, No. 4:16-CV-00770, 2020 WL 13228375, at *4 (S.D. Tex. Mar. 19, 2020) ("Plaintiffs may only recover costs taxable under section 1920."), *aff'd*, 7 F.4th 241 (5th Cir. 2021); *Black v. SettlePou, P.C.*, No. 3:10-cv-1418, 2014 WL 3534991, at *12 (N.D. Tex. July 17, 2014) (finding that "costs not specifically listed in Section 1920 are not recoverable by a prevailing FLSA plaintiff even if they are of the sort a lawyer would normally charge to a fee-paying client").

Plaintiffs are thus entitled to recover $1,000.45 for the costs incurred for deposition transcripts, hearing transcripts, and copying. Those expenses are expressly permitted under § 1920. Plaintiffs are not entitled to recover the mediation fee and delivery fee, as those costs are not allowed under § 1920.

## CONCLUSION

I recommend that Plaintiffs' Motion for Entry of Attorneys' Fees and Costs Pursuant to the Fair Labor Standards Act be **GRANTED**. HR-IT should pay

Plaintiffs attorneys' fees in the amount of $160,755 and costs in the amount of $1,000.45.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 7th day of August 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE